IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN McNEMAR, | ) | CASE NO. 1:10-CV-2079 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the

undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner")

denying Plaintiff Karen McNemar's ("Plaintiff" or "McNemar") application for Disability Insurance

Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental

Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is

supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the undersigned recommends that the decision of the

Commissioner be REVERSED and REMANDED.

## I.  **INTRODUCTION & PROCEDURAL HISTORY**

On July 26, 2005, Plaintiff filed applications for Disability Insurance Benefits and

Supplemental Security Income Benefits, alleging a disability onset date of June 30, 2005.[1]  (Tr. 54-

58, 307-09).  Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 310-17).

---

[1]Plaintiff filed subsequent applications in October of 2008.  (Pl.'s Br. at 2).  However,
this appeal only pertains to McNemar's disability states from her onset date of June 30, 2005
through July 25, 2008, the date of the ALJ's decision.  *Id.*

Plaintiff timely requested and was granted an administrative hearing.  (Tr. 44, 46-47).  On June 26,

2008, McNemar appeared with counsel and testified at a hearing held before Administrative Law

Judge Mark Carissimi (the "ALJ" or "ALJ Carissimi").  (Tr. 318-59).  Testifying at the hearing were

Plaintiff and Ms. Kathleen Reis, an impartial vocational expert (the "VE").  *Id.*

The ALJ issued a written decision on July 25, 2008, in which he applied the five-step

sequential evaluation analysis,[2] and determined that Plaintiff retained the residual functional

capacity ("RFC") to perform a limited range of work existing in significant numbers in the national

economy and, therefore, was not disabled.  (Tr. 16-24).  Subsequently, Plaintiff requested review

of the ALJ's decision from the Appeals Council.  (Tr. 9).  On April 2, 2010, McNemar submitted

---

[2]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

a report to the Appeals Council summarizing her objections to the ALJ's decision.[3]  (Doc. 13, Ex.
A).  On July 20, 2010, the Appeals Council denied Plaintiff's request for review, thereby making
the ALJ's determination the final decision of the Commissioner.  (Tr. 4-6).  Plaintiff now seeks
judicial review pursuant to 42 U.S.C. §§  405(g) and 1383(c)(3).

## II.  PERSONAL BACKGROUND & MEDICAL EVIDENCE

Plaintiff, born on December 9, 1966, was thirty-eight years old at the time of her onset date
and considered a younger person for Social Security purposes.  (Tr. 22, 54); 20 C.F.R. §
404.1563(c).  She took special education classes and graduated from high school.  (Tr. 334).  When
McNemar was in the tenth grade, she was  administered the Wechsler Adult Intelligence Scale-
Revised ("WAIS-R") test.  (Tr. 81).  The test rated McNemar as having a verbal IQ score of 72,
performance IQ score of 71, and a full scale score of 71.  *Id.*  In the twelfth grade, Plaintiff took the
Wide Range Achievement - Level 2 Test ("WRAT-R$^2$").  (Tr. 79).  This test revealed that
McNemar's reading and spelling abilities were at the third grade level, and that her arithmetic skills
were at the eighth grade level.  *Id.*   After graduating from high school in 1986, Plaintiff began
working at Burger King in February of 1991 as a crew member.  (Tr. 331).  Her duties included
preparing food, operating the cash register and cleaning the dining room.  (Tr. 326).  McNemar
eventually attained the position of assistant manager and had responsibilities such as counting down
the cash drawers, closing the restaurant, and participating in hiring decisions. (Tr. 327-28).  In June
of 2005, Plaintiff terminated her employment with Burger King because she could not handle
standing on her feet during the long shifts (up to 12 hours).  (Tr. 333).

---

[3]This evidence was not included in the transcript filed by the Commissioner.  However,
Plaintiff submitted it attached to her brief.

3

In January of 2006, Plaintiff presented to Dr. Singh Deeppreet complaining of burning across the top of her feet.  (Tr. 269).  Upon reviewing x-rays of McNemar's feet, Dr. Deeppreet noted that there was no acute musculoskeletal pathology seen in either foot, but that there was bone spurring in both feet at the attachment of the Achilles tendon and the plantar aponeurosis.  *Id.*  Dr. Deeppreet also identified minimal degenerative change in McNemar's right foot.  (Tr. 270).

On May 23, 2006, Plaintiff presented to Dr. Daniel Duffy again complaining of burning sensations in her feet.  (Tr. 244).  Dr. Duffy found that Plaintiff had palpable pedal pulses and mild osteopenia on her left foot.  (Tr. 244, 250).  However, he noted that she had a full range of motion, and had no joint effusions or swelling.  *Id.*  In August of that year, he directed her to begin physical therapy.  (Tr. 245).

On June 12, 2007, Dr. Douglas McDonald performed x-rays on Plaintiff's feet.  (Tr. 302-03). Dr. McDonald opined that the pain in Plaintiff's right foot was probably from an "old healed right third metatarsal fracture."  (Tr. 302).  However, he detected degenerative changes in Plaintiff's left ankle.  (Tr. 303).

In June of 2008, Dr. Rogener Lacerna, Plaintiff's treating physician, completed a Medical Source Statement evaluating Plaintiff's physical abilities and limitations.  (Tr. 305-06).  In it, Dr. Lacerna indicated that Plaintiff could lift and carry 20 pounds occasionally and frequently, but that she would need to elevate her legs for one hour each work day, and need to lie down for two hours during the day.  (Tr. 305).  Dr. Lacerna also commented that McNemar's pain was extreme and that on average, she would need to miss four days of work each month.  (Tr. 306).

There are no reports from state agency physicians in the record.

### III.  <u>VOCATIONAL EXPERT TESTIMONY</u>

During the hearing, the VE classified Plaintiff's prior work at Burger King according to terms used in the Dictionary of Occupational Titles ("DOT").  (Tr. 344).  The VE explained that McNemar's prior work fell within three different job categories: fast food worker, cook work, and assistant manager.  *Id.*  ALJ Carissimi then posed a hypothetical question to the VE asking her to identify whether there was work available for an individual with Plaintiff's vocational background, a "12th grade Special Education" and Plaintiff's RFC.  *Id.*  In response, the VE stated that such an individual would be able to work as a cashier (200,000 in the nation; 4,000 jobs in Ohio), food and beverage order clerk (115,000 in the nation; 1,700 jobs in Ohio), production inspector/dowel inspector (135,000 in the nation; 1,600 jobs in Ohio), and as an office helper (65,000 in the nation; 2,700 jobs in Ohio).[4]  (Tr. 345-47).  The VE also testified that there were other sedentary jobs which the hypothetical person could perform.  (Tr. 347).  Next, the ALJ asked the VE a second hypothetical question, this time including the restrictions imposed by Dr. Lacerna, along with limitation that the individual would be off task 20 percent of the time.  (Tr. 347-48).  In response, the VE stated that these limitations would preclude full-time competitive employment.  (Tr. 348).

During Plaintiff's cross-examination of the VE, counsel questioned the VE regarding whether the VE's job incidence figures included part-time work.  (Tr. 349).  The VE answered that to the best of her knowledge, the incidence figures did not include part-time work, but that she would need to check in order to be certain.  *Id.*  Counsel also inquired about the General Learning Ability ("GLA") rating associated with each of the occupations the VE identified.  (Tr. 349-58).

---

[4]The VE stated that her job incidence figures were already reduced to account for Plaintiff's limitation on walking for no more than two hours.  (Tr. 345).

After compiling the data, the VE testified that the inspector position was equivalent to GLA level 4, officer helper required GLA level 2, and the positions of a cashier and food and beverage order clerk both fell within GLA level three.  (Tr. 357).

## IV.  ALJ'S DECISION

After completing a review of the record, ALJ Mark Carissimi determined that McNemar was not disabled under the Social Security regulations.  (Tr. 16-24).  At step one of the sequential evaluation analysis, the ALJ found that McNemar had not engaged in substantial gainful activity since her alleged disability onset date of June 30, 2005.  (Tr. 18).  At step two, ALJ Carissimi ruled that Plaintiff suffered from the following severe impairments: degenerative joint disease of the bilateral feet, obesity, diabetes mellitus, diabetic neuoropathy, and borderline intellectual functioning.  *Id.*  However, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  Before moving to step four, the ALJ found that McNemar retained the RFC:

> [T]o perform a range of work with lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; pushing and pulling up to 20 pounds occasionally and 10 pounds frequently, sitting for six hours in an eight hour day, standing and walking for two hours each in an eight hour day and the claimant is limited to simple routine work.

(Tr. 20).  At step four, ALJ Carissimi determined that Plaintiff's RFC did not permit her to perform her past relevant work as a crew member or assistant manager in the fast food industry.  (Tr. 22).  Yet, at step five, the ALJ concluded that McNemar was capable of performing other work which existed in significant numbers in the national economy.  (Tr. 22-24).  Specifically, the ALJ found that McNemar could work as a cashier, food and beverage order clerk, dowel inspector, and office

helper.  (Tr. 23).

ALJ Carissimi rejected Plaintiff's argument that her IQ scores on record reflected her inability to perform several of the jobs identified by the VE. (Tr. 23).  Instead, the ALJ explained that Plaintiff's ability to maintain employment which involved closing out cash registers and being involved with hiring decisions, showed that her IQ was higher than 71.  *Id.*  ALJ Carissimi further noted that Plaintiff's school records showed that she had "previously demonstrated higher IQ scores and her teachers noted that she achieved well for her intellectual abilities."  *Id.*  Finally, ALJ Carissimi determined that the VE's testimony was reliable despite her inability to confirm the number of part-time jobs included in her job incidence figures.  *Id.*  The ALJ stated that the VE "cited a large number of jobs available [to Plaintiff], and thus, even if some of the jobs [we]re part-time, the remaining number of full time jobs would still be considered significant."  *Id.*

## V.  <u>DISABILITY STANDARD</u>

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

## VI.  <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal

standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII.  ANALYSIS

Plaintiff objects to the ALJ's decision based upon the following six assignments of error: 1) the administrative record was defective due to its omission of Plaintiff's post-hearing submission to the Appeals Council; 2) the ALJ improperly relied upon the VE's identification of jobs which exceeded Plaintiff's mental capabilities given her diagnosis of borderline intellectual functioning; 3) the ALJ's failure to request updated intelligence testing; 4) the hypothetical question posed to the VE was inadequate to address McNemar's moderate limitation in concentration, persistence and pace; 5) the ALJ's determination at step five was improperly based upon a consideration of part-time

jobs; and 6) the ALJ's assessment of Plaintiff's educational background was not supported by the record.

### 1.  Borderline Intellectual Functioning

McNemar maintains that the ALJ's step two finding identifying her borderline intellectual functioning ("BIF") as a severe impairment, essentially precluded the ALJ from finding that she was capable of performing three of the four occupations identified by the VE.  Plaintiff's argument is based upon the IQ scores associated with a diagnosis of BIF.  Because BIF signifies an IQ score ranging between 71 and 84, Plaintiff contends that the ALJ's acceptance of this condition as a severe impairment necessarily precluded the ALJ from finding that Plaintiff's IQ score was any higher than 84, signifying an IQ score in the bottom fourteenth percentile of the nation.  Because the VE classified three of the occupations she identified as requiring a GLA higher than the equivalent of intelligence in the fourteenth percentile (cashier, food and beverage order clerk, and office helper), McNemar contends that none of these three jobs satisfied the ALJ's burden at step five of the sequential evaluation process.

Although Plaintiff's argument has facial appeal, the Court notes the dearth of legal support offered by Plaintiff in support of her argument.  The undersigned notes that Plaintiff has failed to cite any case law supporting her position on this issue.  On the other hand, the Court found case law addressing the identical issue ruling against Plaintiff's argument.  Defendant also cited to case law, that while concerning a different issue, offers some insight into how the Court should analyze this assignment of error.  Two cases from the Central District of California are particularly instructive.  *See Vasquez v. Astrue*, No. CV-08-505, 2009 WL 3672519, at *1-3 (C.D. Cal. Oct. 30, 2009); *Ariola v. Astrue*, No. CV-09-333, 2009 WL 1684542, at *2-6 (C.D. Cal. June 16, 2009).  In both cases, the

plaintiffs contended that their diagnosis of BIF precluded them from working at particular jobs

identified by the VE because the positions were above their abilities based upon the positions' GLA

scores.  *Id.*  In rejecting this argument, the *Vasquez* court stated:

> Plaintiff offers no authority for the proposition that the GLA aptitude scale is comparable to IQ or other cognitive functioning tests which determine an individual's intellectual functioning level.  Moreover, Plaintiff fails to offer, and the Court is unaware of, any authority suggesting that borderline intellectual functioning, even at the lowest ten percent of the population, is equivalent or comparable to GLA aptitude scales.

2009 WL 3672519, at *3.  The *Vasquez* court also stated that "the ALJ's finding that Plaintiff

perform simple, routine tasks…[was] consistent with Plaintiff's borderline intellectual functioning."

*Id.* at *2.  Likewise, the Court finds that the Third Circuit case cited by Defendant, *Burns v.*

*Barnhart*, also warns against comparing a claimant's IQ score with the GLA aptitude levels, as such

levels are not incorporated into the DOT.[5]  312 F.3d 113, 128 (3d Cir. 2002).

Given the similarities between Plaintiff's argument here and those put forth in *Vasquez* and

*Ariola*, the Court declines to order remand on this issue.  Plaintiff has failed to cite to any authority

which substantiates her argument that one's IQ score directly correlates to a GLA aptitude level.

Furthermore, the undersigned finds that it was reasonable for the ALJ to conclude that neither

Plaintiff's dated IQ score from 25 years ago, nor her diagnosis of BIF, accurately reflected her

current learning aptitude, in light of more recent evidence showing that she retained the competency

to become an assistant manager at Burger King and live independently.

---

[5]The *Burns* court was specifically addressing whether the ALJ had a duty to question the VE pursuant to Social Security Ruling 00-4p regarding whether there was a conflict between the VE's testimony and the DOT.

Nevertheless, the Court's ruling on this issue does not dispose of the case for two reasons. First, regardless of how the undersigned resolves this issue, the fact remains that Plaintiff has only raised a challenge to three of the four jobs identified by the VE.  Therefore, even if we accepted Plaintiff's argument here, which we do not, our review of the ALJ's decision would continue based on a consideration of whether ALJ's Carissimi's identification of the occupation of a dowel inspector satisfied the Commissioner's burden at step five.  Second, because the Court's finds that remand is warranted for other reasons, the undersigned's resolution of this issue is of less significance.

## 2.  Concentration, Persistence or Pace

Although the claimant bears the burden of proving that her impairments have rendered her incapable of working at steps one through four of the sequential evaluation process, at step five, the burden shifts to the Commissioner to identify a significant number of jobs existing in the national economy which accommodates the plaintiff's RFC. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The Commissioner satisfies this burden by showing "substantial evidence that a claimant has the vocational qualifications to perform specific jobs[.]"  *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).  "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays plaintiff's individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (*citing Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).  Here, ALJ Carissimi's hypothetical question described Plaintiff's exertional limitations, vocational background, and characterized her non-exertional abilities as limiting her to simple, routine work.

11

In his written decision, ALJ Carissimi stated that Plaintiff had moderate difficulties in concentration, persistence or pace. McNemar asserts that ALJ Carissimi erred by failing to incorporate this finding into his RFC assessment or his hypothetical question posed to the VE. In support of this argument, Plaintiff cited several cases from the Sixth Circuit in which the court specifically addressed an ALJ's duty to incorporate this particular limitation into its hypothetical question posed to the VE. *See Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Ealy v. Comm'r of Soc. Sec.* 594 F.3d 504 (6th Cir. 2010).

In *Smith*, the plaintiff argued that the ALJ's hypothetical was insufficient to apprise the VE that the plaintiff "often" suffered from deficiencies in concentration because it only directed the VE to identify work which was routine and low stress. *Smith*, 307 F.3d at 378-79. But, the Sixth Circuit found that the ALJ's hypothetical question was sufficient to account for the plaintiff's frequent concentration problems because it "went beyond this simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment as *Varley* requires." *Id at 379*. For example, the hypothetical question included a restriction against jobs involving quotas, complexity and stress. *Id.*

Next, in *White*, the plaintiff argued that the ALJ's hypothetical restricting the plaintiff to "simple repetitive type work" did not properly account for her moderate limitation in the ability to concentrate and maintain attention. 572 F.3d at 287. In overruling Plaintiff's objection, the Sixth Circuit distinguished its ruling from that in *Edwards v. Barnhart*, 383 F. Supp.2d 920 (E.D. Mich. 2005). *Id.* at 287-88. The plaintiff in *Edwards* claimed that the hypothetical question posed by the ALJ limiting her to "jobs entailing no more than simple, routine, unskilled work" and limiting interaction with co-workers, supervisors and the public, did not properly accommodate the ALJ's

finding that she suffered from a moderate limitation in the ability to concentrate, persist and keep

pace. *Edwards*, 383 F. Supp.3d at 930.  The Eastern District of Michigan agreed with the plaintiff

and ruled:

> While close, these are not sufficient, and do not fully convey Plaintiff's limitations
> in concentration to the VE.  Plaintiff may be unable to meet quotas, stay alert, or
> work at a consistent pace, even at a simple, unskilled, routine job.  The current
> hypothetical question is not adequate on the issue of moderate limitations of
> concentration, persistence and pace for this Court to have any idea as to the number
> of the assembly, packing, and sorting or security guard jobs identified by the VE that
> would be excluded if quotas or other aspects related to moderate concentration
> limitations were added to the hypothetical question.  Each of these jobs seems to
> require a degree of sustained concentration, persistence and pace.

*Id.* at 930-31 (internal citations omitted).  Accordingly, the court remanded the case back to the ALJ.

Returning to the Court's discussion of *White,* in which the Sixth Circuit considered whether the

ALJ's hypothetical limiting the plaintiff to "simple repetitive type work" properly accounted for the

plaintiff's concentration and attention problems, the Court affirmed the ALJ's ruling after

distinguishing its ruling from that in *Edwards*.  *White*, 572 F.3d at 287-88.  The court explained that

the hypothetical question at play in *Edwards* "gave the VE no indication that the plaintiff had

'moderate limitations on concentration, persistence and pace'" whereas in the ALJ in *White*

"expressly included the condition that the claimant had a 'moderate limitation in the claimant's

ability to maintain attention and concentration due to [a] mental impairment'" as part of his line of

questioning of the VE.  *Id.* at 288.  Therefore, unlike the VE in *Edwards*, the VE in *White* was

apprised of the plaintiff's limitations in this area of mental functioning.

Lastly, McNemar cited to *Ealy v. Commissioner of Social Security* in support of her

argument that ALJ Carissimi should have referenced her moderate limitations in concentration,

persistence and pace in his RFC assessment or hypothetical question posed to the VE.  Both the ALJ

13

and the state agency physician in *Ealy* found that the plaintiff had moderate limitations in concentration, persistence and pace. *Ealy*, 594 F.3d at 516. The state agency physician limited "Ealy's ability to sustain attention to complete simple repetitive tasks to 'two-hour segments over an eight-hour day where speed was not critical[,]'" but the ALJ merely informed the VE that the plaintiff was limited to "simple repetitive tasks and instructions in non-public work settings." *Id*. Citing *Edwards*, the Sixth Circuit found that the ALJ's hypothetical question was inadequate to convey to the VE Ealy's problems with concentration and pace because he omitted the speed and pace based restrictions announced by the state agency physician. *Id*. at 516-17.

In the instant case, ALJ Carissimi's questioning of the VE never advised the VE that Plaintiff had a moderate limitation in concentration, persistence or pace. Notably, the only hypothetical question that even arguably accounted for these problems was ALJ Carissimi's question asking the VE to consider a hypothetical individual that, *inter alia*, would be off-task roughly 25 percent of the time, to which the VE responded that such an individual would not be able to sustain full-time competitive employment. Although the ALJ's written decision states that he was limiting McNemar to simple, routine work due to her BIF, the undersigned is not persuaded that the ALJ's decision to limit Plaintiff to this type of work adequately conveyed McNemar's moderate limitation in concentration, persistence and pace. Case law from this district and the Sixth Circuit suggests that the ALJ's hypothetical question or RFC must state something more than merely a limitation to simple, repetitive, and routine work in order to properly account for a plaintiff's moderate deficiency in concentration. *See Candela v. Astrue*, No. 1:10-CV-1603, 2011 WL 3205726, at *10-12 (N.D. Ohio Feb. 5, 2010) (White, J.); *Ealy*, 594 F.3d 504. As a consequence, the undersigned finds that ALJ Carissimi's failure to reference Plaintiff's moderate limitation in this area of functioning

rendered the VE's testimony unreliable under *Varley*.  Therefore, the VE's testimony did not serve as substantial evidence to support the ALJ's step five finding.

While the undersigned deems that the ALJ's failure here warrants remand, the Court declines to further order ALJ Carissimi to obtain updated intelligence testing as Plaintiff requests.  It is well-established that "an ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1517, 416.917).  "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (*citing* 20 C.F.R. § 416.917(a)).  The undersigned does not conclude that the ALJ erred by failing to request additional testing because the Court finds that the record was not so lacking as to hinder the ALJ's ability to make a determination.  Instead, the Court rules that after reviewing the record and making a determination of Plaintiff's limitations, the ALJ erred by failing to properly account for those limitations in his RFC assessment and the hypothetical question posed to the VE.  Thus, if ALJ Carissimi deems it beneficial to request additional testing prior to a subsequent hearing, he may do so, but the Court does not find that this additional testing is required as a matter of law.

### 3. Part-Time Jobs

McNemar's next assignment of error asserts that the ALJ's finding at step five was not supported by substantial evidence because he improperly relied upon "unreviewable speculation as to the number of full-time jobs" available to Plaintiff.  (Pl.'s Br. at 12).  As McNemar correctly notes, Social Security Ruling 96-8p requires the ALJ to base his RFC assessment on Plaintiff's

ability to perform work on a regular and continuing basis.  SSR 96-8p.  The ruling defines "regular

and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id*.

Plaintiff argues that the VE's inability to confirm whether the job incidence figures she identified

excluded all part-time work, rendered the VE's testimony incapable of carrying the Commissioner's

burden at step five, as only a showing of a substantial number of full-time jobs can satisfy this

burden.  Additionally, McNemar maintains that the ALJ's statement in his decision, that "even if

some of the jobs are part-time, the remaining number of full time jobs would still be considered

significant" was mere speculation and did not constitute as substantial evidence.

Because the undersigned has already determined that remand is warranted for other reasons,

the Court will only briefly state its reasons for rejecting Plaintiff's argument here.  Prior to the

formation of Social Security Ruling 96-8p, the Sixth Circuit accepted part-time work as a form of

substantial gainful activity.  *See Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir.

1995).  But, when Social Security Ruling 96-8p was formulated, the Administration clarified that

an ALJ's RFC must be based upon the claimant's ability to perform full-time work.  However, the

ruling does not address what impact, if any, it has upon the ALJ's obligations at step five of the

sequential evaluation process.  *See* SSR 96-8p.  Notwithstanding, the Seventh Circuit and district

courts within this circuit have addressed the issue and concluded that the ruling does not impose a

duty upon the VE to only identify the availability of full-time jobs.  *See Liskowitz v. Astrue*, 559

F.3d 736, 745 (7th Cir. 2009); *see also Miller v. Astrue*, No. 09-50, 2009 WL 3566649, at *4-5 (E.D.

Ky. Oct. 27, 2009); s*ee also Derossett v. Astrue*, No. 7:09-CV-46, 2009 WL 4169489, at *4-6 (E.D.

Ky. Nov. 20, 2009).  Characterizing the ruling as imposing an additional burden on the VE is an

overstatement of the rule.  *Miller*, 2009 WL 3566649, at *4; *Liskowitz*, 559 F.3d at 745.  As the

Seventh Circuit aptly stated, "[t]o say that the ALJ may deny benefits only if she finds the claimant capable of some form of full-time work is quite different from saying that only full-time jobs can constitute significant work in the national economy." *Liskowitz,* 559 F.3d at 745.   Social Security Ruling 96-8p only addresses the former, not the latter.

Although there is case law in this circuit which supports McNemar's argument here, *see Pugh v. Astrue*, No. 3:08-CV-117, 2009 WL 1361922, at *4 n. 6 (E.D. Tenn. 2009), it can be distinguished from the case *sub judice*.  For example, in *Pugh*, the plaintiff argued that she was only capable of working part-time based her physician's statement that she could not complete an eight hour work day.  *Pugh,* 2009 WL 1361922, at *4.  In other words, if Pugh was unable to perform an eight hour work day, then the ALJ would not be able to conclude that she retained the RFC to perform substantial gainful activity pursuant to Social Security Ruling 96-8p.  But here, McNemar has not alleged that her ailments only permit her to work on a part-time basis, and neither has Plaintiff pointed to any evidence in the record to support such an argument.  Accordingly, the undersigned finds that there was no duty upon the VE or ALJ to specifically identify the number of full-time jobs available to Plaintiff.  Therefore, the VE's failure to make such a finding does not necessitate remand.

### 4. Educational Background

In his written decision, ALJ Carissimi stated that McNemar had a high school education. 20 C.F.R. § 404.1564(b)(4) provides the definition of high school education as follows: "[h]igh school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above.  We generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. § 404.1564(b)(4).

The regulation also states that an adjudicator is entitled to use the numerical grade level the claimant completed as representing the claimant's educational abilities, unless there is other evidence to contradict it.  20 C.F.R. § 404.1564(b).  McNemar claims that the ALJ's written opinion failed to properly describe her educational background because he stated that she had "at least a high school education."  Although McNemar completed the twelfth grade, she attended special education classes while in school.  Plaintiff therefore argues that based upon her low achievement test scores, BIF, and school records, the administrative record does not support the ALJ's finding she had the equivalent of a high school education because evidence in the record contradicts that finding.

While it is true that Plaintiff was enrolled in special education classes during school, and tests from 1986 reflected that she performed as low as at the third grade level, twenty-five year old test results would not accurately reflect her actual comprehension levels as of the date of the hearing. *See* 20 C.F.R. § 404.1564(a) ("Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education.  Your daily activities . . . may also show that you have significant intellectual ability that can be used to work.").  Since the time the WRAT-R test was performed on McNemar in 1986, she has been able to gain employment at a reputable fast food restaurant, earn the position of an assistant manager, and live independently.

In his hypothetical question posed to the VE, ALJ Carissimi described McNemar as having a "12th grade Special Education".  Plaintiff also described herself as being a twelfth grade graduate from special education classes.  Nevertheless, McNemar asserts that the ALJ's description of her educational attainment level to the VE was harmful because three of the jobs identified by the VE required language development skills above the base level – implying that they would be above

Plaintiff's educational level.  Because the ALJ will have a second chance to review the record, on remand he should articulate his reasons for concluding that Plaintiff has at least the equivalent of a high school education, given the existence of evidence undermining this finding.  While this issue would not necessarily warrant remand on its own, given the ramification of the Court's prior ruling to remand, it would behoove the ALJ reconsider his ruling on this issue to make evident why he ultimately concluded that McNemar had retained the equivalent of a high school education and not some lesser degree of education.  On remand, the ALJ shall clearly incorporate his educational background finding into his ruling at step five of the sequential evaluation analysis, including any hypothetical question presented to the VE.

### 5. Evidence Submitted to the Appeals Council

In conjunction with her appeal of the ALJ's decision to the Appeals Council, McNemar faxed a letter to the council outlining her arguments why it should overturn ALJ Carissimi's decision.  This letter was not included in the transcript filed with the Court by Defendant.  Plaintiff sought to include this evidence as part of the record.  Plaintiff's letter to the Appeals Council is part of the administrative record.  However, the Court's review of the ALJ's decision is solely based upon the evidence which was present before the ALJ because the Appeals Council denied Plaintiff's request for review.  *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).  Therefore, Defendant's omission of this evidence was harmless.

## VIII.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that McNemar was not disabled is not supported by substantial evidence.  Accordingly, the Court recommends the decision of the Commissioner be REVERSED and REMANDED to the Social

Security Administration for further proceedings not inconsistent with this Report and Recommendation.


                                              s/ Kenneth S. McHargh
                                              Kenneth S. McHargh
                                              United States Magistrate Judge

Date: August 29, 2011.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).